UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
YOLANDA GRILLASCA, by her next friend,
LESLIE CARDONA,

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 4/7/10

                    Plaintiff,

        - against -

NEW YORK CITY HOUSING AUTHORITY, and JOHN
B. RHEA, as Chairman of the New York City
Housing Authority,

                    Defendants.
----------------------------------------X

**MEMORANDUM AND ORDER**

09 Civ. 6392 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Before the Court are the plaintiff's motion for a preliminary injunction and the defendants' cross-motion for summary judgment.  For the following reasons, the plaintiff's motion is denied, and the defendants' motion is granted in part and denied in part.

## BACKGROUND[1]

The plaintiff brings this case to enjoin the defendants from holding an administrative proceeding to terminate her tenancy in an apartment building operated by defendant New York City Housing Authority ("NYCHA").  She alleges that the proposed administrative proceeding violates federal law because it would

---

[1] The following background is drawn from the parties' submissions.  There is no factual dispute between the parties.

be based on the same misconduct that was at issue in a prior judicial eviction proceeding brought, unsuccessfully, by NYCHA.

## I.   The Plaintiff's Arrest and Plea

On April 1, 2005, the plaintiff was arrested after the New York City Police Department executed a search warrant and found drugs and drug paraphernalia in her apartment. (Def. Mem. at 1.) She ultimately pled guilty, on February 16, 2006, to the felony of criminal possession of a controlled substance in the fourth degree, admitting that she possessed 31 bags of cocaine in her apartment and that she intended to sell them. (Id.) She received five years of probation. (Pl. Mem. at 6.)

## II.  The State Court Eviction Proceeding

### A.   Initiation of the Action

On July 22, 2005, the plaintiff was served by NYCHA with a "Notice of Lease Termination Pursuant to 24 C.F.R. § 966.4(k) and (l)." The notice informed the plaintiff that she would need to appear, on a date to be determined, at a hearing in New York City Civil Court, pursuant to New York Real Property Actions and Proceedings Law §§ 715 and 711(5) (the "Bawdy House Law") and New York Real Property Law § 231(a). (Pl. Mem. at 6.) The notice explained that the objective of the proceeding was to evict the plaintiff based on the "illegal narcotic-related activity" that occurred on April 1, 2005. (Id.) The notice

2

further specified that the plaintiff was "not entitled to a grievance hearing on this lease termination." (Id.)

NYCHA commenced the eviction proceeding on September 27, 2005, by holdover petition. (Id. at 7.) A trial was held over the course of two days in the summer of 2006. (Id.)

## B. Dismissal of the Action

On August 13, 2007, the civil court dismissed NYCHA's petition. NYCHA v. Grillasca, 18 Misc. 3d 524, 852 N.Y.S.2d 610 (N.Y. Civ. Ct. 2007). The court held that NCYHA had failed to satisfy the legal standard applicable to evictions under the Bawdy House Law.

NYCHA had argued that it could evict a tenant for illegal drug activity under a "strict liability standard," which would permit eviction regardless of whether the tenant was aware of the activity or not. Id. at 527-28. The agency advanced this position based on its interpretation of the Supreme Court's decision in Department of Housing and Urban Development v. Rucker, 535 U.S. 125 (2002), which held that federal law requires public housing authorities ("PHAs") to include in their leases a clause providing for termination of tenancy due to drug activity on the premises, irrespective of the tenant's awareness of the activity. Grillasca, 18 Misc. 3d at 527.

Rejecting NYCHA's argument, the court drew a distinction between eviction actions based on lease violations (which were

3

at issue in Rucker) and statutory eviction proceedings under the
Bawdy House Law. Id. at 528. Under the standard applicable in
Bawdy House Law proceedings, NYCHA had to show that the
apartment had been used "customarily or habitually" for an
illegal trade or business (such as the sale of illegal drugs)
and that the tenant "either knew or should have known of the
illegal activity in the apartment." Id. at 527. The court
concluded that NYCHA had failed to prove either of those things.
Id. at 529.

NYCHA did not appeal the court's dismissal.

## III. The Proposed Administrative Proceeding

On May 28, 2008, NYCHA served the plaintiff with a written
notice of administrative termination of tenancy based on charges
of non-desirability and breach of NYCHA rules and regulations.
(Def. Mem. at 10.) The attempted termination is based on the
same April 1, 2005 incident that was at issue in the Bawdy House
Law proceeding. (See Pl. Mem., Salzman Aff. Ex. D at 2.)

## IV. The Instant Proceeding

The plaintiff filed her complaint in this case on July 17,
2009. On July 21, 2009, she filed an order to show cause to
enjoin the administrative proceeding. NYCHA agreed to adjourn
the administrative proceeding pending the Court's decision on
the plaintiff's motion for a preliminary injunction.

4

The plaintiff's moving papers were filed on August 13, 2009. On September 14, 2009, NYCHA cross-moved for summary judgment. The Court held an oral argument on February 8, 2010, at which decision on both motions was reserved.

## DISCUSSION

Before we address the parties' motions, it is necessary at the outset to review the substantial body of law that governs NYCHA's handling of administrative tenancy terminations and judicial evictions. We then turn to the plaintiff's motion for a preliminary injunction and the defendants' motion for summary judgment. As we explain below, although the plaintiff has raised serious questions going to the merits of certain of her claims, her motion is ultimately denied due to her failure to demonstrate both that she will suffer irreparable harm absent an injunction and that the balance of hardships tips decidedly in her favor. The defendants' motion is granted in part (with respect to two legal arguments presented by the plaintiff which we reject at this stage) and denied in part (with respect to the remainder of the plaintiff's claims).

## I. Legal Framework Governing NYCHA's Administrative Tenancy Termination Process and PHA Judicial Eviction Procedures

The parties' motions require us to address the history of NYCHA's administrative tenancy termination process, as well as

5

the relevant federal legal framework governing administrative and judicial eviction actions brought by PHAs.

## A. NYCHA's Administrative Tenancy Termination Process and the Escalera Consent Decree (Escalera I)

Since 1971, a consent decree has governed the procedures that NYCHA must use when administratively terminating a tenancy on the grounds (among others) of non-desirability and breach of rules and regulations. Escalera v. NYCHA, 425 F.2d 853 (2d Cir. 1970). The Escalera consent decree created a multi-level grievance process that includes a full evidentiary hearing before an impartial hearing officer. See Escalera v. NYCHA ("Escalera II"), 924 F. Supp. 1323, 1328-30 (S.D.N.Y. 1996).

If NYCHA determines that a tenant's lease should be terminated but the tenant subsequently fails to vacate, the agency must then commence a summary holdover proceeding in the Housing Part of the New York City Civil Court, in order to obtain a warrant of eviction. Id. at 1330. The tenant may move to stay the holdover action by initiating a proceeding, in New York State Supreme Court, under Article 78 of New York's Civil Practice Law and Rules. Id.

The remedies available to NYCHA in an administrative proceeding include termination of tenancy, probation, and continued tenancy subject to permanent exclusion of an offending

family member. (Def. Mem. at 19; Def. Mem., Murphy Decl. Ex. G at 21-23.)

## B. New York's Bawdy House Law

Sections 711(5) and 715 of the New York Real Property Actions and Proceedings Law, known as the Bawdy House Law, provide that a special proceeding may be maintained where "[t]he premises, or any part thereof, are used . . . for any illegal trade or manufacture, or other illegal business." N.Y. R.P.A.P.L. § 711(5).

As discussed earlier, to recover possession through a Bawdy House Law proceeding, the petitioner must show that the apartment has been "customarily or habitually" used for an illegal trade or business and that the tenant knew or should have known about the illegal activity. Grillasca, 18 Misc. 3d at 527. If the petitioner satisfies this standard, there is no need to initiate a holdover proceeding for eviction. Escalera II, 924 F. Supp. at 1331. The tenant, moreover, does not have the recourse of an Article 78 proceeding to challenge a warrant of eviction issued after a Bawdy House Law proceeding. Id.

## C. The U.S. Housing Act and the Implementing Regulations of the Department of Housing and Urban Development ("HUD")

### 1. The U.S. Housing Act of 1937 and Subsequent Amendments

In 1983, the U.S. Housing Act of 1937 was amended to require all PHAs to create an administrative grievance procedure

7

that would generally be required before a PHA could commence an eviction proceeding in landlord-tenant court. The amendment, however, included the following exception: "An agency may exclude from its procedure any grievance concerning an eviction or termination of tenancy in any jurisdiction which requires that, prior to eviction, a tenant be given a hearing in court which the Secretary [of HUD] determines provides the basic elements of due process." Pub. L. 98-181, § 204, adding subsec. 1437d(k) and 1437d(l) (emphasis added).

In 1990, the Act was amended to provide, through 42 U.S.C. § 1437d(k), that a PHA could only exempt from its grievance procedure certain types of cases, including grievances concerning an eviction or termination of tenancy based on drug-related criminal activity. See Pub. L. 101-625, § 503(a), amending subsec. 1437d(k) (emphasis added). The provision today reads in relevant part as follows:

> For any grievance concerning an eviction or termination of tenancy that involves any . . . drug-related criminal activity on or off such premises . . . . the agency may (A) establish an expedited grievance procedure . . . or (B) exclude from its grievance procedure any such grievance, in any jurisdiction which requires that prior to eviction, a tenant be given a hearing in court which the Secretary determines provides the basic elements of due process . . . . [emphasis added]

8

Thus, in certain instances, 42 U.S.C. § 1437d(k) permits PHAs to bypass administrative hearings and proceed directly to the courts in order to evict tenants.

According to a conference report, the provision as amended was "intended to reach criminal activity that seriously endangers other tenants or PHA employees, while preserving the grievance process for all other categories of evictions." 136 Cong. Reg. H13692, H13811 (Oct. 25, 1990). See also 24 C.F.R. § 966.51(a)(2)(i) ("a PHA may exclude from the PHA administrative grievance procedure" any grievance concerning drug-related criminal activity); Public Housing Lease and Grievance Procedures, 56 Fed. Reg. 51560-01, 51567 (Oct. 11, 1991) (stating that PHAs may "use an expedited grievance process or bypass the grievance process").

When a PHA opts to bypass the administrative grievance procedure, it is required to provide a notice of lease termination to the tenant (like the one provided to the plaintiff on July 22, 2005) explaining "that the tenant is not entitled to a grievance hearing on the termination." 24 C.F.R. § 966.4(l)(3)(v).

## 2. HUD's 1991 Regulations

To implement the 1990 amendment, HUD promulgated a regulation specifying that "[i]f HUD has issued a due process determination, the PHA may evict the occupants of the dwelling

9

unit through the judicial eviction procedures which are the subject of the determination. In this case, the PHA is not required to provide the opportunity for a hearing under the PHA's administrative grievance procedure." 56 Fed. Reg. 51560-01 at 51579.

At the same time, a separate regulation -- 24 C.F.R. § 966.4(l)(4) -- specified that "[t]he PHA may evict the tenant from the unit only by bringing a court action." Id. at 51578 (emphasis added). As explained later, this rule "was intended to assure [sic] that public housing tenants [would] not be evicted without the opportunity for a fair and full hearing, and to preclude 'self-help' eviction by the PHA landlord, without the opportunity for such a hearing." Public Housing Lease and Grievance Procedures, 60 Fed. Reg. 27058-02, 27059 (May 22, 1995).

### 3. HUD's 1995 Revision to the Regulations

In 1995, HUD sought to amend 24 C.F.R. § 966.4(l)(4) to eliminate the restriction that tenants could be evicted only through court actions. HUD clarified that "the PHA may also elect to evict the tenant by bringing an administrative action." 60 Fed. Reg. at 27059. Specifically, as HUD explained, the PHA would be allowed to "evict without bringing a court action if the law of the jurisdiction permits eviction by administrative action, after a due process administrative hearing, but does not

10

require a court determination of the rights and liabilities of the parties." Id.

HUD explained that the revision was "intended to avoid the necessity for duplicative administrative and judicial hearings where State or local law allows a PHA to evict a tenant after a due process administrative hearing, but does not require a court hearing or court process to carry out the eviction." Id. HUD further noted that the rule "would provide that in order to evict without bringing a court action, the PHA must afford the tenant the opportunity for a pre-eviction hearing in accordance with the PHA grievance procedure." Id.

HUD's concern regarding duplicative administrative and judicial hearings had arisen in light of the fact that, under Hawaiian law, the Hawaii Housing Authority was permitted to evict a tenant after a due process administrative hearing and without a follow-up judicial action. This presented a legal problem because under the rule then in effect, "the Authority [could] 'only' evict the tenant by bringing a judicial action." Id. The Hawaii Housing Authority thus had to provide both "the opportunity for an administrative hearing in accordance with Hawaii law, and then bring a separate judicial action for eviction of the tenant in accordance with the HUD rule." Id. HUD determined that the administrative proceeding provided under Hawaiian law was sufficient to protect the due process rights of

11

tenants and that, under such circumstances, it was not necessary for tenants to have the added protection of a judicial process. Id.

HUD adopted the proposed rule in 1996, noting that "[o]nly PHAs located in States which authorize administrative evictions will be able to bypass judicial eviction procedures." Public Housing Lease and Grievance Procedures, 61 Fed. Reg. 13272, 13272 (Mar. 26, 1996).

Thus, since April 25, 1996, 24 C.F.R. § 966.4(l)(4) has read as follows:

(4) How tenant is evicted. The PHA may evict the tenant from the unit either:

(i) By bringing a court action or;

(ii) By bringing an administrative action if law of the jurisdiction permits eviction by administrative action, after a due process administrative hearing, and without a court determination of the rights and liabilities of the parties. In order to evict without bringing a court action, the PHA must afford the tenant the opportunity for a pre-eviction hearing in accordance with the PHA grievance procedure.

The defendants here note that "this regulation has had no effect on NYCHA inasmuch as New York law always required court action prior to eviction, regardless of whether or not it is preceded by an administrative hearing." (Def. Mem. at 8.)

12

## D.   Modification of the Escalera Consent Decree (Escalera II)

In 1991, HUD Secretary Jack Kemp issued a determination concluding that judicial proceedings under New York's Bawdy House Law provided the basic elements of due process, thereby allowing NYCHA to forego administrative hearings in drug-related evictions.   Escalera II, 924 F. Supp. at 1342.   Even after this, however, NYCHA did not use the Bawdy House Law, out of concern that the original Escalera decree required the use of the administrative process.   (Def. Mem. at 8.)

Thus, in 1993, NYCHA successfully sought an order modifying the original Escalera consent decree so that the agency could "proceed directly" under the Bawdy House Law "to seek the eviction of tenants who use or acquiesce in the use of their apartments for the trafficking of illegal narcotics."   Escalera II, 924 F. Supp. at 1346.   NYCHA's decision to seek this order was motivated largely by the fact that Bawdy House Law proceedings were substantially shorter in duration than administrative proceedings.   See id. at 1330-31.

## II.   The Plaintiff's Motion for a Preliminary Injunction

A party seeking a preliminary injunction must show (1) a likelihood of irreparable harm in the absence of the injunction; and (2) either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them

13

a fair ground for litigation, with a balance of hardships tipping decidedly in the movant's favor. Doninger v. Niehoff, 527 F.3d 41, 47 (2d Cir. 2008).[2] A preliminary injunction is a "drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Grand River Enter. Six Nations, Ltd. v. Pryor, 481 F.3d 60, 66 (2d Cir. 2007) (quoting Moore v. Consol. Edison Co., 409 F.3d 506, 510 (2d Cir. 2005)).

As we explain below, the plaintiff has presented sufficiently serious questions going to the merits of her case. However, she has failed to demonstrate both that she would experience irreparable harm absent a preliminary injunction and that the balance of hardships tips decidedly in her favor. Accordingly, her motion is denied.

## A.   The Merits of the Plaintiff's Claims

The plaintiff makes four arguments in support of her case. First, she claims that NYCHA's attempt to initiate an administrative tenancy termination proceeding in the wake of the

---

[2] We are mindful that when a "moving party seeks to stay government action taken in the public interest pursuant to a statutory or regulatory scheme, the district court should not apply the less rigorous fair-ground-for-litigation standard" but should instead require the movant to demonstrate a likelihood of success on the merits. Plaza Health Laboratories, Inc. v. Perales, 878 F.2d 577, 580 (2d Cir. 1989) (emphasis added). We do not apply that standard here because the plaintiff is, in effect, arguing that NYCHA is acting beyond its legally circumscribed powers.

14

Bawdy House Law action is precluded by 42 U.S.C. § 1437d(k) and HUD's implementing regulations. Second, the plaintiff contends that the administrative proceeding is barred by the doctrine of res judicata. Third, the plaintiff argues that the administrative proceeding would entail a violation of the Due Process Clause of the United States Constitution. Finally, the plaintiff maintains that an administrative hearing would violate 42 U.S.C. § 1983 ("Section 1983"), since NYCHA would be violating her federally protected rights under color of state law. We find that the plaintiff has raised sufficiently serious questions going to the merits of her case only with respect to her first claim (concerning 42 U.S.C. § 1437d(k) and applicable HUD regulations) and her derivative Section 1983 claim.

## 1. The Permissibility of NYCHA's Proposed Administrative Hearing Under Federal Law

The parties have expended much effort parsing statutory and regulatory provisions in support of their positions. At bottom, the question we are presented with is whether there is any indication that NYCHA much choose between two mutually exclusive options -- an administrative tenancy termination and a Bawdy House Law proceeding. We first summarize the parties' views on this admittedly complex question. We then explain that although we are not convinced by the plaintiffs, we nevertheless conclude that they have raised sufficiently serious questions going to

15

the merits of the claim in order to make it a fair ground for litigation.

### a) The Plaintiff's Arguments

The plaintiff makes five broad arguments in support of her claim that federal law precludes NYCHA from proceeding with its proposed administrative hearing.

First, the plaintiff notes that 42 U.S.C. § 1437d(k) and an associated HUD regulation permit a PHA to "exclude" grievances based on drug activity from its administrative procedure. 42 U.S.C. § 1437d(k); 24 C.F.R. § 966.51(a)(2)(i) ("a PHA may exclude from the PHA administrative grievance procedure any grievance" concerning drug-related criminal activity); see also 56 Fed. Reg. 51560-01 at 51567 (characterizing 24 C.F.R. § 966.51(a)(2)(i) as permitting PHAs to "use an expedited grievance process or [to] bypass the grievance process"). According to the plaintiff, these provisions imply that once a legally permissible category of grievances has been excluded from the administrative grievance process, and NYCHA has opted to pursue them through judicial actions, the agency cannot later return to the administrative process to prosecute them.

Second, the plaintiff suggests that the legislative history behind the amendment that created the current language of 42 U.S.C. § 1437d(k) indicates that the provision was "intended to reach criminal activity that seriously endangers other tenants

16

or PHA employees, while preserving the grievance process for all other categories of evictions."   136 Cong. Reg. H13692, H13811 (Oct. 25, 1990).   The plaintiff claims that if Congress had intended for the grievance process to be preserved for terminations excluded from the grievance process, it would not have specified that the grievance process would be preserved for "all other" evictions but, rather, would have indicated that it was preserving the grievance process for "all" categories.

Third, 24 C.F.R. § 966.4(l)(4) provides that a PHA may evict a tenant from a unit "either: (i) By bringing a court action or; (ii) By bringing an administrative action."   The plaintiff contends that this "either"/"or" construction implies that PHAs have a mutually exclusive choice.   Thus, NYCHA could have initially chosen either path but, having made the choice to proceed with a court action, the agency is bound by the result.

Fourth, the plaintiff points to the notice provision in 24 C.F.R. § 966.4(l)(3)(v), which requires that when a PHA opts to evict a tenant by going straight to court, it must provide a notice specifying that the tenant is not entitled to a grievance hearing.   The plaintiff observes that this provision would make little sense if the agency could pursue an administrative proceeding after losing a court action, since the apparent purpose of the provision is to inform the tenant of which procedure will be used to evict her.

17

Finally, the plaintiff cites two cases to support her interpretation of the relevant statutory and regulatory provisions. She points to language in Escalera II stating that NYCHA had sought a modification of the original Escalera decree in order to use the Bawdy House Law "in lieu of its administrative procedures." 924 F. Supp. at 1338 n.12. According to the plaintiff, this was an acknowledgment that if NYCHA chose to use the judicial eviction mechanism, it could not later resort to the administrative process. The plaintiff also points to NYCHA v. Lipscomb-Arroyo, 19 Misc. 3d 1140(A), 1140, 866 N.Y.S.2d 93 (N.Y. Civ. Ct. 2008), which notes that "NYCHA has a choice to invoke the administrative process" rather than pursue court action to effectuate an eviction.

### b) The Defendants' Arguments

The defendants make three broad arguments in opposition to the plaintiff.

First, the defendants observe that nothing in 42 U.S.C. § 1437d(k) or the implementing regulations specifically requires a PHA to make an exclusive selection between administrative and judicial eviction proceedings. It is possible, on NYCHA's view, that the agency can make a choice between the two avenues, lose, and then pursue the other of the two options that were available at the outset.

18

Second, the defendants maintain that the plaintiff has misinterpreted the "either"/"or" language of 24 C.F.R. § 966.4(l)(4). Rather than requiring PHAs to make exclusive selections between "a court action" and "an administrative action," the provision was enacted with the intention of expanding the menu of options available to PHAs seeking to evict tenants. In support of this interpretation, NYCHA points to the history surrounding the promulgation of the regulation -- in particular, HUD's intention to ensure that states could evict people without resort to court action so long as their administrative processes contained sufficiently robust procedural protections. NYCHA further claims that 24 C.F.R. § 966.4(l)(4) is irrelevant in any event, since New York law has never permitted NYCHA to evict tenants without court action of some sort. See Escalera II, 924 F. Supp. at 1330 (describing the process of acquiring a warrant of eviction if a tenant fails to vacate after an adverse administrative finding).

Finally, the defendants point to Escalera II itself. They note that the case nowhere requires NYCHA to make an exclusive choice between an administrative proceeding and an action under the Bawdy House Law. They further point to briefing submitted by NYCHA at the time that purportedly belies the notion that NYCHA ever sought (or received) an order requiring the agency to make an exclusive selection.

19

### c) Analysis

While this Court has carefully reviewed the authorities cited by the parties, we conclude that both sides have thus far failed to locate any statute or regulation that provides clear guidance on the narrow issue before us. The language in 42 U.S.C. § 1437d(k) and 24 C.F.R. § 966.51(a)(2)(i) stating that a PHA may "exclude" a grievance from its administrative process does not indicate whether that exclusion is irrevocable. Further, while the plaintiff initially spent much time focusing on the "either"/"or" language of 24 C.F.R. § 966.4(l)(4), she was apparently unaware prior to the defendants' brief that this language was added in 1995 to address concerns that had arisen in connection with the state eviction procedures in Hawaii. Now aware, she appears to have abandoned the argument, though it is admittedly unclear. (See Pl. Rep. Mem. at 3 n.2.) Regardless, we have seen no evidence to indicate that HUD amended 24 C.F.R. § 966.4(l)(4) with any particular view concerning whether a PHA's choice between an administrative proceeding and a court

20

action was a mutually exclusive one.[3]  Nor do we believe that any
of the legislative or regulatory history cited by the plaintiff
is directly on point.

Moreover, it is clear that the Escalera II decision did not
address the question at hand.   The parties here have simply
taken excerpts from the decision and submissions to the Escalera
II court out of context in support of their preferred outcomes.
It is undoubtedly true that the Escalera II decision gave NYCHA
the right to pursue an eviction under the Bawdy House Law, but
there is nothing in the decision that addresses whether NYCHA's
choice between the administrative process and the Bawdy House
Law proceeding then became a mutually exclusive one.   The issue

---

[3] It is worth noting that, despite the plaintiff's position
(at least in her opening brief), the "either"/"or" formulation
in fact tells us very little by itself.   It is perhaps helpful
to consider, for illustrative purposes, everyday scenarios in
which the context of this formulation is critical to its
interpretation.   For instance, someone might ask her neighbor to
water her plants while she is on vacation, give the neighbor a
key to the house, and tell him that he can enter the home
"either" through the front door "or" through the back door.   If,
for some reason, the key did not work in the front door, we
would not understand the homeowner's instruction to imply that
the neighbor could not then try to enter through the back door.
On the other hand, consider a diner picking from a fixed price
menu at a restaurant.   The waiter and the menu tell her that for
her main course, she can have "either" the steak "or" the
salmon.   If the diner chose the steak, finished it, and then
determined that she would have in fact preferred the salmon, we
would say that, in that particular context, the "either"/"or"
language clearly prevents her from demanding a piece of salmon.
    In short, the "either"/"or" construct may tell us that a
party has a choice.   But it indicates nothing, on its own, about
whether that choice is a mutually exclusive one.

was simply not put before the court, and it therefore went unaddressed. The decision in NYCHA v. Lipscomb-Arroyo, cited by the plaintiff, is similarly inapposite.

The standard for a preliminary injunction, however, does not require a plaintiff to conclusively prove her case as a matter of law. For several reasons, we find that she has raised sufficiently serious questions going to the merits of her claim to make them a fair ground for litigation. First, while we are not convinced that the relevant statutory and regulatory provisions should be read in the way that the plaintiff suggests, we are also not convinced by the defendants that those provisions sanction NYCHA's proposed administrative hearing here. Just as these provisions do not tell us whether NYCHA's choice between the administrative and judicial routes is a mutually exclusive one, the provisions also fail to specify that NYCHA is free to pursue one route and then, having failed, pursue the other. We also find compelling the plaintiff's argument concerning the notice provision contained in 24 C.F.R. § 966.4(l)(3)(v), which requires a PHA pursuing a judicial eviction action to inform a tenant that she will not have an administrative hearing. It is difficult to understand how this provision would serve the interests of tenants if PHAs, having tried and failed to use a judicial eviction option, still had the ability to evict them through an administrative mechanism.

22

Although we nevertheless deny the plaintiff's motion for a preliminary injunction because she has failed to demonstrate irreparable harm, we suggest that if the parties intend to move forward with this case,[4] each side should focus more intently on the structural aspects of the Housing Act and HUD's implementing regulations, rather than attempting to wrangle their preferred outcomes from language that is variously inapposite and ambiguous.[5]  The parties should also address the interplay between the apparent legislative purposes to expand the methods a PHA can use to evict drug dealers while also ensuring that any eviction affords the tenant adequate procedural due process. The parties may find it useful to further examine the legislative history of the relevant provisions, and if the relevant history fails to provide adequate clarity, the parties should address the relevant statutory interpretive principles and canons that might apply to the provisions at issue.

---

[4] We have repeatedly suggested that the parties might be able to resolve this case either by reaching a settlement with this particular plaintiff (for instance, by seeking a narrower outcome than eviction) or by requesting clarification from Chief Judge Preska regarding whether NYCHA's actions here are permissible, as a general matter, under her Escalera II decision modifying the original Escalera consent decree.

[5] The plaintiff's argument concerning the notice provision - - which asks the Court to review the legality of NYCHA's proposed administrative proceeding in the context of another federal provision and how its purpose would be affected if NYCHA were to prevail -- is an example of such a structural argument.

## 2. The Doctrine of Res Judicata

The plaintiff also contends that NYCHA is barred from pursuing the administrative proceeding by the doctrine of res judicata. We disagree.

"The doctrine of res judicata 'provides that a final judgment on the merits bars a subsequent action between the same parties over the same cause of action.'" Ljutica v. Holder, 588 F.3d 119, 126 (2d Cir. 2009) (quoting Channer v. Dep't of Homeland Sec., 527 F.3d 275, 279 (2d Cir. 2008)). In order to determine whether a second proceeding is barred, courts must first determine whether the second proceeding involves the same "claim," or "nucleus of operative fact," as the first suit. "To ascertain whether two actions spring from the same 'transaction' or 'claim,' [courts] look to [1] whether the underlying facts are related in time, space, origin, or motivation, [2] whether they form a convenient trial unit, and [3] whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." Interoceanica Corp. v. Sound Pilots, Inc., 107 F.3d 86, 90-91 (2d Cir. 1997) (internal quotations omitted).

Moreover, "a plaintiff cannot avoid the effects of res judicata by 'splitting' his claim into various suits, based on different legal theories." Waldman v. Village of Kiryas Joel, 207 F.3d 105, 110 (2d Cir. 2000). However, "[e]ven where

24

a second action arises from some of the same factual circumstances that gave rise to a prior action, res judicata is inapplicable if formal jurisdictional or statutory barriers precluded the plaintiff from asserting its claims in the first action." Computer Assoc. Int'l, Inc. v. Altai, Inc., 126 F.3d 365, 370 (2d Cir. 1997), cert. denied, 521 U.S. 1106 (1998).

The plaintiff argues that res judicata applies because the facts at issue in the Bawdy House Law proceeding and the proposed administrative proceeding would be identical. Indeed, NYCHA does not dispute that the administrative proceeding would be exclusively focused on the incident on April 1, 2005, which also formed the basis of NYCHA's case against the plaintiff under the Bawdy House Law. Although the defendants contend that there were procedural barriers preventing them from bringing the claim against the plaintiff in the Bawdy House Law proceeding that NYCHA now seeks to bring through the administrative hearing, the plaintiff responds that this is nothing more than improper claim splitting. According to the plaintiff, NYCHA was fully aware of any differing legal burdens and theories available in the forums.

The plaintiff's argument, however, fails to fully address the differences between the two forums. The claims that NYCHA seeks to bring against the plaintiff through the administrative proceeding -- based on non-desirability and breach of NYCHA

25

rules and regulations -- could not have been brought in the Bawdy House Law case. Pursuant to the Escalera consent decree, such claims must be initiated in an administrative proceeding. See Escalera II, 924 F. Supp. at 1329. By contrast, a Bawdy House Law proceeding is a statutory proceeding that permits eviction based on the use of an apartment for illegal purposes; it is unrelated to a tenant's lease itself. See generally N.Y. R.P.A.P.L. §§ 711(5), 715; Escalera II, 924 F. Supp. at 1329-1331; Grillasca, 18 Misc. 3d at 528.

The Bawdy House Law proceeding also differs from the administrative proceeding in terms of the applicable legal standard. A successful Bawdy House Law case requires the petitioner to show that the tenant "customarily or habitually" used her apartment for an illegal trade or business and that the tenant "either knew or should have known of the illegal activity in the apartment." Grillasca, 18 Misc. 3d at 527. A case in NYCHA's administrative proceeding can be won under a strict liability standard, simply by demonstrating that there was drug

activity on the premises on as little as one occasion.  See id.
at 528.[6]

We are sympathetic to the plaintiff's claim that NYCHA's
opposition to her argument focuses, to some extent, on form
rather than substance.  The agency notes, for instance, that the
only relief available in a Bawdy House Law proceeding is an
eviction, while in NYCHA's administrative proceeding, the
remedies include termination of tenancy, as well as probation
and continued tenancy subject to the exclusion of the offending
family member.  But as the plaintiff notes, there has thus far
been no indication that NYCHA is prepared to seek anything short
of the plaintiff's eviction.[7]

Nevertheless, we do not accept the plaintiff's argument
that NYCHA's proposed administrative proceeding is barred by the
doctrine of res judicata.  The claims NYCHA now seeks to pursue
in the administrative setting could not have been brought in the
Bawdy House Law proceeding, and the applicable legal standards

---

[6] The plaintiff contends that this was all clear prior to
NYCHA's initiation of the Bawdy House Law suit, but that does
not appear to be accurate.  Indeed, the court's decision in that
proceeding clearly explains that NYCHA argued (unsuccessfully)
that the strict liability standard should also apply in Bawdy
House Law cases.  See Grillasca, 18 Misc. 3d at 527.  The
plaintiff has not even contended, let alone demonstrated, that
NYCHA's arguments concerning the appropriate legal standard in
that case were frivolous as a matter of law.

[7] This is despite the Court's suggestion that agreeing to a
narrower remedy might facilitate the settlement of this case.

that NYCHA must satisfy prior to obtaining a tenant's eviction
are clearly distinct.

### 3. The Due Process Clause

The Fifth Amendment of the United States Constitution
provides that no person shall be deprived of property "without
due process of law."[8] The plaintiff argues that NYCHA's proposed
administrative hearing would entail a violation of both her
procedural due process rights and her substantive due process
rights. The defendants acknowledge that the plaintiff has a
property interest in retaining her public housing but deny that
the proposed administrative hearing is constitutionally infirm.
(Def. Mem. at 21). We reject the plaintiff's claim that NYCHA's
proposed administrative hearing would violate her substantive
due process rights, but although we do not believe the plaintiff
has raised serious questions at this time going to the merits of
her procedural due process claim, we do not rule out the
possibility that she can ultimately prevail on a procedural due
process theory.

The plaintiff makes two broad arguments in support of her
claim. First, she contends that her due process rights will be
violated if she is forced to go through the administrative
proceeding, since she has already participated and prevailed in

---

[8] This injunction applies to both federal and state
governmental entities. See Bolling v. Sharpe, 347 U.S. 497
(1954).

28

the Bawdy House Law proceeding.  As she puts it, "Due process
requires some finality; the process must have an end."  (Pl.
Mem. at 22.)  Second, she contends that if NYCHA were allowed to
proceed with the administrative proceeding, this would introduce
an  unconstitutional  asymmetry  in  the  parties'  rights  and
remedies.  NYCHA could lose its Bawdy House Law proceeding and
"simply get another chance to evict [the plaintiff] in the
administrative  process,  when  Ms.  Grillasca,  had  she  been
unsuccessful at trial, would have had no right to defend herself
again in an administrative proceeding."  (Id. at 22.)  Rather
than structuring these arguments specifically as procedural or
substantive due process claims, the plaintiff appears to argue
that they demonstrate violations of both types of due process
rights.

The plaintiff has failed, however, to cite a single case
that  supports  either  argument,  whether  classified  as  a
procedural or substantive due process claim.  Instead, she
simply quotes broad statements from Supreme Court caselaw -- for
instance, about how the "essence of due process" is the
opportunity to be heard at a meaningful time and in a meaningful
manner, Matthews v. Eldridge, 424 U.S. 319, 348 (1976); about
how the Due Process Clause was designed to prevent government
from  "abusing"  its  power  or  using  it  for  the  "purposes  of
oppression,"  DeShaney  v.  Winnebago  County  Dep't  of  Social

Services, 489 U.S. 189, 196 (1989) (internal quotations omitted); and about how the Due Process Clause protects against "arbitrary" government action that may include "a denial of fundamental procedural fairness," County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998). (See Pl. Mem. at 21-23; Pl. Rep. Mem. at 12-13.) This is all true, but statements like these are constitutional boilerplate. These platitudes tell us nothing meaningful about the constitutional propriety of a particular type of governmental action, in a particular statutory and regulatory context, implicating a particular set of individual interests. Indeed, we see no meaningful parallel whatsoever between the cases cited by the plaintiff and the actions that NYCHA seeks to take here.[9]

We specifically reject the notion that NYCHA's proposed administrative proceeding poses a substantive due process problem. In order to state a valid claim for violation of substantive due process, a plaintiff must show that the government exercised power "without any reasonable justification in the service of a legitimate governmental objective." SeaAir

---

[9] See County of Sacramento v. Lewis (police officer does not violate substantive due process rights by causing death through deliberate or reckless indifference to life in a high-speed automobile chase); DeShaney v. Winnebago County Dep't of Social Services (failure of social services department to provide child with adequate protection against his father's violence did not violate his substantive due process rights); Matthews v. Eldridge (due process does not require a pre-termination hearing prior to termination of social security benefits).

30

NY, Inc. v. City of New York, 250 F.3d 183, 187 (2d Cir. 2001) (quoting County of Sacramento v. Lewis, 523 U.S. at 846). Substantive due process protects individuals from government action that is "arbitrary, conscience-shocking, or oppressive in a constitutional sense." Lowrance v. Achtyl, 20 F.3d 529, 537 (2d Cir. 1994) (internal quotations and citations omitted). It does not protect "against government action that is incorrect or ill-advised," but "government action might be so arbitrary that it violates substantive due process regardless of the fairness of the procedures used." Id. (internal quotations omitted).

We are not convinced that the plaintiff necessarily poses a continuing threat of criminal activity,[10] but it is not difficult to perceive a legitimate objective for NYCHA's actions: the plaintiff pled guilty to possession with intent to distribute 31 bags of cocaine. NYCHA presumably has an interest in preventing a drug dealer from residing in an apartment on its premises and, instead, using that apartment to house someone who has not pled guilty to a felony drug offense.

Moreover, the Supreme Court has explained that the liberty interest protected by the substantive due process doctrine is a carefully circumscribed one that is limited principally to matters concerning marriage, family, procreation, contraception,

---

[10] Her arrest took place in 2005, and NYCHA has not alleged that there has been other drug-related activity in her apartment.

and bodily integrity. The Court has also explained that it has "always been reluctant to expand the concept of substantive due process." Washington v. Glucksberg, 521 U.S. 702, 720 (1997) (quoting Collins v. City of Harker Heights, 503 U.S. 115, 125 (1992)); see also Singer v. Fulton County Sheriff, 63 F.3d 110, 115 (2d Cir. 1995), cert. denied, 517 U.S. 1189 (1996). The plaintiff has utterly failed to present an argument that (a) specifically articulates an alleged and actionable deprivation and then (b) places the alleged deprivation into a relevant category or, for that matter, into any remotely relevant case from the jurisprudence of substantive due process.

Although we have a slightly more favorable view of the procedural due process claim, the plaintiff's arguments are still questionable as a matter of logic. Contrary to the plaintiff's suggestion, NYCHA has not, in fact, reserved the right to a process with no end. Rather, NYCHA claims that federal law allows the agency two attempts to evict a tenant for drug-related activity -- once through the Bawdy House Law and then, if the agency fails, through its administrative procedure. Furthermore, it is unclear whether the alleged asymmetry of the proposed process poses a true constitutional problem. There are other situations in which the law provides the government with procedural advantages that are not mirrored on the side of the individual. Government regulators may, for instance, proceed in

parallel against parties through both criminal and civil enforcement proceedings, see generally United States v. Kordel, 397 U.S. 1 (1970), and the result of one need not conclusively control the other.

At the same time, we are not convinced by the defendants' arguments that NYCHA's actions pose no procedural due process problem. NYCHA notes that an Article 78 proceeding has typically been held by the Second Circuit to be an adequate post-deprivation remedy. See, e.g., Hellenic Am. Action Comm. v. City of New York, 101 F.3d 877, 880 (2d Cir. 1996), cert. denied, 521 U.S. 1140 (1997). However, when a deprivation is not based on "random, unauthorized acts by state employees" and occurs instead "in the more structured environment of established state procedures," a post-deprivation remedy "will not, ipso facto, satisfy due process." Id. The defendants also note that NYCHA's administrative process has robust procedural protections, but, like the defendants' argument concerning the availability of the Article 78 proceeding, this fails to address the heart of the plaintiff's claim -- which is not that the administrative proceeding is, by itself, a violation of the Due Process Clause but, rather, that an administrative proceeding following a failed judicial eviction proceeding is constitutionally problematic.

Thus, although we conclude that the plaintiff has not raised sufficiently serious questions on the merits of her due process claim to weigh in favor of a preliminary injunction, our rejection of the plaintiff's argument is not a conclusive one. Should the parties opt not to settle this case and to proceed through discovery, the plaintiff may argue again, at an appropriate time, that NYCHA's proposed administrative hearing would violate her procedural due process rights. In order to prevail, however, any future submission will need to be more carefully supported by apposite caselaw and/or analogies with much more direct relevance to the case before us.

### 4.  Section 1983

Section 1983 authorizes an injured person to assert a claim for relief against another person who, acting under color of state law, violated the claimant's federally protected rights. There are two elements to a prima facie case under Section 1983: the plaintiff must allege both (1) a deprivation of a federal right and (2) that the person who deprived the plaintiff of that right acted under color of state law. See, e.g., West v. Atkins, 487 U.S. 42, 48 (1988).

The defendants do not (and presumably could not) dispute that they are acting under color of state law. We have already concluded that the plaintiff has raised sufficiently serious questions going to the merits of her claim that the defendants

34

have violated 42 U.S.C. § 1437d(k) and HUD's implementing regulations. Given that conclusion, it follows that the plaintiff has raised sufficiently serious questions on her Section 1983 claim.

We note, however, that our conclusion relies only on the Section 1983 claim as it relates to the defendants' actions concerning her case in particular. The plaintiff also claims in passing that "NYCHA has apparently adopted a practice and policy of bringing an administrative hearing after an unsuccessful housing court eviction proceeding based on the same facts." (Pl. Mem. at 23-24.) Although the argument is devoid of any citation, we understand this to suggest that NYCHA should be held liable pursuant to Monell v. Department of Social Services, 436 U.S. 658 (1978), for an official policy or custom resulting in a deprivation of the plaintiff's constitutional rights. We reject this claim at this time, since the plaintiff has utterly failed to provide any evidence of an official policy or custom beyond her conclusory assertion that "apparently" this is the case.

## B.    The Balance of Hardships

The plaintiff has also failed to convincingly show that the balance of hardships tips decidedly in her favor. Absent a preliminary injunction, NYCHA would be free to once again attempt to evict the plaintiff and to fill her apartment with

35

someone who has not pled guilty to a drug crime. If preliminary enjoined, NYCHA faces the prospect of a delay in this result.

To be sure, the plaintiff is not without her own interests. Absent a preliminary injunction, the plaintiff will be required to go through an administrative hearing that could result in her eviction. We do not find this to be a particularly burdensome undertaking, however, since the plaintiff will presumably be represented by the same *pro bono* counsel she has in this case and, as we explain immediately below in further detail, the administrative hearing is subject to judicial review that will allow her to make the same arguments that she is currently making before this Court.

Given the parties' interests and prospective burdens with and without a preliminary injunction, we cannot conclude that the balance of hardships tips decidedly in the plaintiff's favor.

## C. Irreparable Harm

Despite the foregoing, we must ultimately deny the plaintiff's motion due to her failure to demonstrate irreparable harm.

A showing of irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction." Faiveley Transport Malmo AB v. Wabtec Corp., 559 F.3d 110, 118 (2d Cir. 2009) (quoting Rodriguez v. DeBuono, 175 F.3d 227,

234 (2d Cir. 1999)). In order to satisfy the irreparable harm requirement, the plaintiff "must demonstrate that absent a preliminary injunction [she] will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." Grand River Enter. Six Nations, Ltd. v. Pryor, 481 F.3d 60, 66 (2d Cir. 2007) (internal quotation marks omitted). Absent a showing of irreparable harm, a motion for a preliminary injunction should be denied. Rodriguez, 175 F.3d at 234.[11]

The plaintiff alleges that she will suffer two types of irreparable harm if denied preliminary injunctive relief. First, she claims that she will "hav[e] to appear for a potentially difficult eviction hearing" that will be held in derogation of her tenancy rights. (Pl. Mem. at 24.) Second, she argues that she "risks the loss of her public housing apartment, her home of almost 16 years." (Id.)

---

[11] If a plaintiff alleges the deprivation of a constitutional right, this is typically sufficient to support a finding of irreparable harm. Jolly v. Coughlin, 76 F.3d 468, 482 (2d Cir. 1996). However, given our conclusion that the plaintiff has failed (at this point) to raise serious questions going to the merits of her constitutional claims, this presumption is unavailable to her. See Connecticut Dep't of Envtl. Prot. v. OSHA, 356 F.3d 226, 230 (2d Cir. 2004). Moreover, the plaintiff has failed to present relevant precedent for the proposition that merely participating in the administrative hearing would constitute a constitutional injury.

37

The plaintiff's argument overlooks the availability of an Article 78 proceeding following NYCHA's administrative hearing. Of course, there is no guarantee that the independent hearing officer presiding over the administrative hearing would agree with the agency's position that the plaintiff should be evicted. But even assuming that the officer determined that the plaintiff's tenancy should be terminated, NYCHA would then serve her with a notice to vacate. Escalera II, 924 F. Supp. 1323 at 1330. If the plaintiff chose not to vacate, NYCHA would then need to commence a holdover proceeding in the Housing Part of the New York City Civil Court. At that point, the plaintiff could move to stay the holdover proceeding in New York State Supreme Court through Article 78. Id.

An Article 78 proceeding affords the petitioner a wide scope of review. That review includes, most pertinently for our purposes, "whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion." N.Y. C.P.L.R. § 7803. Constitutional issues can also be decided in an Article 78 proceeding. Christ the King Reg. High Sch. v. Culvert, 815 F.2d 219, 224-25 (2d Cir. 1987).

The plaintiff has not claimed, much less demonstrated, that she would be unable to make the same arguments in an Article 78 proceeding as those that she is making before this Court. Thus,

in the absence of injunctive relief, and even following an administrative hearing resulting in an adverse decision, the plaintiff would still have a meaningful opportunity to prevent the loss of her apartment.

We are also not persuaded by the plaintiff's claim that she will suffer irreparable harm merely by having to participate in NYCHA's administrative hearing. The only case she cites in support of this proposition, Blatch v. Hernandez, 360 F. Supp. 2d 595 (S.D.N.Y. 2005), is easily distinguishable. Blatch was a class-action lawsuit challenging the procedures used by NYCHA to handle eviction proceedings involving tenants with mental disabilities. Among the plaintiffs' grievances was NYCHA's failure to adequately investigate whether tenants in administrative tenancy termination proceedings were capable of representing themselves and, if not, to appoint a representative for the tenant for the duration of the proceeding. See id. at 621-22. The plaintiff here seizes on the court's finding that the Blatch plaintiffs would face irreparable harm, absent an injunction, "in the form of loss of Plaintiffs' homes or derogation of their protected tenancy rights." Id. at 622. The plaintiff overlooks the court's reasoning, however, that the constitutional defects at issue in the execution of NYCHA's administrative hearing would not have been capable of adequate

remediation after the fact.[12]   This is not the case here, since the plaintiff does not challenge the procedures that would apply in an administrative hearing but, rather, the fact of the hearing itself.   With no reason to conclude that an Article 78 proceeding could not adequately address her arguments following a hearing, we cannot conclude that the plaintiff would suffer irreparable harm merely by participating in the hearing itself.[13] And, of course, this particular plaintiff will have the benefit (unavailable to others similarly situated) of being represented by competent *pro bono* counsel.

## III. The Defendants' Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

---

[12] See Blatch, 360 F. Supp. at 622 ("the availability of appellate mechanisms or applications to reopen defaults later in the process does not cure the due process violation, as there is no reason to believe that such persons would have the wherewithal to engage those procedures any more meaningfully or effectively than they did in the hearing procedures").

[13] Cf. O'Shea v. Littleton, 414 U.S. 488, 502 (1974) (plaintiffs, alleging that judiciary and police of town engaged in pattern of conduct that deprived plaintiffs of their civil rights, did not demonstrate irreparable injury, because state and federal remedies would be available if they were prosecuted or illegally sentenced); 13 Moore's Federal Practice § 65.22[1][b] (3d ed.) ("The threat of civil litigation . . . generally will not be considered irreparable injury, since the movant is thought to have an adequate legal remedy by way of defense in any proceeding that eventually may be brought.").

is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); see also Quarles v. Gen. Motors Corp., 758 F.2d 839, 840 (2d Cir. 1985).

As explained above, the plaintiff has raised serious legal questions concerning the propriety of NYCHA's actions. Moreover, it is unclear on the record as it currently stands whether any discovery is necessary. No discovery has been taken thus far, and there is no pending cross-motion from the plaintiff for summary judgment. Thus, for the reasons stated above in our analysis of the plaintiff's claims, the defendants' motion for summary judgment is granted with respect to the plaintiff's res judicata and substantive due process claims but is otherwise denied.

## CONCLUSION

The plaintiff's motion for a preliminary injunction is denied (docket no. 5) and the defendants' cross-motion for summary judgment is granted in part and denied in part (docket no. 15). The parties are directed to submit a proposed discovery schedule to the Court by April 29, 2010.

41

Dated:     New York, New York
           April 7, 2010

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

Copies of the foregoing Order have been mailed on this date to
the following:

**Attorney for Plaintiff**
Leslie Salzman, Esq.
Cardozo Bet Tzedek Legal Services
55 Fifth Avenue, 11th Floor
New York, NY 10003

**Attorney for Defendants**
Donna M. Murphy, Esq.
New York City Housing Authority
Law Department
250 Broadway, 9th Floor
New York, NY 10007